UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES, Attorney General of the
State of New York,

                    Petitioner,

     - against -

DAILYPAY, INC.,

                    Respondent.

Case No. 25 Civ. 3439

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF PETITIONER'S MOTION TO REMAND**

            LETITIA JAMES
            Attorney General of the
            State of New York

            Christopher L. Filburn
            Assistant Attorney General
            Bureau of Consumer Frauds & Protection
            28 Liberty Street, 20th Floor
            New York, New York 10005
            212.416.8303

            *Counsel for Petitioner*
            *People of the State of New York*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.     THE PETITION ASSERTS SOLELY STATE-LAW CLAIMS ....................................... 1

II.    THIS PROCEEDING NECESSARILY RAISES NOVEL AND SUBSTANTIAL STATE LAW ISSUES BUT NO COMPARABLE FEDERAL LAW ISSUES ................ 4

        A.    Exercising Jurisdiction on Any Basis Will Disrupt the State-Federal Balance ...... 4

        B.    The Opposition's Identified Questions Cannot Sustain Federal Jurisdiction ......... 5

               *1.*    *Questions Regarding Remedies* ...................................................................... 6

               *2.*    *Questions Regarding the Statute of Limitations* ........................................ 7

               *3.*    *Questions Regarding DailyPay's Violation of the CFPA* ........................... 7

CONCLUSION ............................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**CASES**

*AMTAX Holdings 227, LLC v. CohnReznick LLP*,
     136 F.4th 32 (2d Cir. 2025) .................................................................................................. 5

*Belmont v. Jetblue Airways Corp.*,
     401 F. Supp. 3d 348 (E.D.N.Y. 2019) ................................................................................... 7

*Beneficial Nat'l Bank v. Anderson*,
     539 U.S. 1 (2003) ................................................................................................................... 1

*Broder v. Cablevision Systems Corp.*,
     418 F.3d 187 (2d Cir. 2005) .................................................................................................. 2

*California v. ARC Am. Corp.*,
     490 U.S. 93 (1989) ................................................................................................................. 3

*Caterpillar Inc. v. Williams*,
     482 U.S. 386 (1987) ............................................................................................................... 1

*CFPB v. FDATR*,
     No. 20 Civ. 6879 (N.D. Ill. May 1, 2025) ............................................................................. 6

*CFPB v. ITT Educational Services, Inc*,
     219 F. Supp. 3d 878 (S.D. Ind. 2015) ................................................................................... 8

*E. States Health & Welfare Fund v. Phillip Morris, Inc.*,
     11 F. Supp. 2d 384 (S.D.N.Y. 1998) ..................................................................................... 3

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*,
     463 U.S. 1 (1983) ................................................................................................................... 7

*Jacobson v. Wells Fargo Nat'l Bank, N.A.*,
     824 F.3d 308 (2d Cir. 2016) .................................................................................................. 4

*Johnson v. Portfolio Recovery Assocs., LLC*,
     No. 21 Civ. 1049S, 2021 WL 5275731 (W.D.N.Y. Nov. 12, 2021) ................................... 3

*Medina v. Ramsey Steel Co.*,
     238 F.3d 674 (5th Cir. 2001) ................................................................................................ 2

*Mims v. Arrow Fin. Servs., LLC*,
     565 U.S. 368 (2012) ............................................................................................................... 1

*New York v. Shinnecock Indian Nation*,
     686 F.3d 133 (2d Cir. 2012) .................................................................................................. 7

*Parish of Cameron v. Auster Oil & Gas, Inc.*,
    No. 16 Civ. 530, 2018 WL 2144281 (W.D. La. May 9, 2018)........................................... 6

*People v. Sirius XM Radio Inc.*,
    735 F. Supp. 3d 272 (S.D.N.Y. 2024).............................................................................. 2

*Qatar v. First Abu Dhabi Bank PJSC*,
    432 F. Supp. 3d 401 (S.D.N.Y. 2020).............................................................................. 6

*State v. Exxon Mobil Corp.*,
    83 F.4th 122 (2023)............................................................................................ 1, 2, 3, 6

*State v. Princess Prestige Co., Inc.*,
    42 N.Y.2d 104 (1977) ..................................................................................................... 7

*Texas v. Colony Ridge, Inc.*,
    No. 24 Civ. 941, 2024 WL 4553111 (S.D. Tex. Oct. 11, 2024)......................................... 6

*Walters v. Ind. & Comm. Bank of China, Ltd.*,
    651 F.3d 280 (2d Cir. 2011)............................................................................................. 7

*Young v. New York City Transit Auth.*,
    903 F.2d 146 (2d Cir. 1990)............................................................................................. 4

**STATUTES**

12 U.S.C. § 5531................................................................................................................... 8

**OTHER AUTHORITIES**

Brief of Appellants,
    *Medina v. Ramsey Steel Co.*, 2000 WL 33993297 (5th Cir. Apr. 20, 2000) ...................... 2

**INTRODUCTION**

The OAG's motion to remand (the "Motion") rests on a simple premise: this proceeding is brought by New York using a New York procedure, asserts New York claims to stop novel violations of New York's usury prohibitions, and does so in a manner authorized by Congress. DailyPay's opposition (the "Opposition") disproves none of the above but still insists that this is a federal action. That is untrue under settled law, and any incidental federal questions—which are not necessarily raised and not substantial—are insufficient bases upon which to interfere with the role of New York courts in overseeing this proceeding. Remand thus should be ordered.

**ARGUMENT**

**I.     THE PETITION ASSERTS SOLELY STATE-LAW CLAIMS**

The "general rule" for removal is that federal jurisdiction does not exist "if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Thus, the OAG is "the master of the claim" and may avoid removal by not asserting claims "created by federal law." *State v. Exxon Mobil Corp.*, 83 F.4th 122, 132–33 (2023). The OAG did just that here, filing a Petition that asserts eight New York causes of action and no federal causes of action. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987) (no federal jurisdiction where plaintiffs "could have brought suit under" federal law but "chose not to do so").

The Opposition concedes, as it must, that the Petition's claims are "pled under Executive Law § 63(12)." (Opp. 5.) Yet DailyPay insists that the OAG "asserts two causes of action under the CFPA" because it "seeks forms of monetary relief" provided by the CFPA. (*Id*.) But DailyPay's cited Supreme Court cases support no such argument; they merely hold that jurisdiction exists if federal law itself, such as the Telephone Consumer Protection Act at issue in *Mims v. Arrow Fin. Servs., LLC*, "creates a private right of action." 565 U.S. 368, 378–79 (2012). Here, the Petition asserts solely state-law claims with elements defined solely by state law. (Mem. 10.)

Two Second Circuit cases defeat any suggestion that the OAG's claims are federal claims. *First*, the *Exxon* Court held that any request to "look beyond" the plaintiff's "characterization of its claims and determine whether the real nature of the complaint is federal" was "foreclosed by binding precedent." 83 F.4th at 133–34. *Second*, in *Broder v. Cablevision Systems Corp.*, the Second Circuit did not treat a state-law claim as a federal claim despite that claim being premised on violations of federal law, 418 F.3d 187, 194–95 (2d Cir. 2005)—as is the case here.

Contrary to DailyPay's argument (Opp. 5–7), the OAG's request for remedies provided for by the CFPA changes nothing. In *Broder*, too, the plaintiff could not "obtain the declaratory" relief he sought without federal law, yet this did not make his claim a federal one. 418 F.3d at 193. And when the OAG seeks injunctive relief that required "reaching the federal issue," the OAG's Executive Law claims remain "causes of action that originate under New York State law." *People v. Sirius XM Radio Inc.*, 735 F. Supp. 3d 272, 277–79 & n.4 (S.D.N.Y. 2024). There simply is no principled reason why a state-law claim that looks to federal law for liability remains a state-law claim while a state-law claim that might look to federal law for remedies does not.

No precedent supports DailyPay here. The Opposition quotes *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001), for supposedly finding federal jurisdiction "because, although plaintiff 'alleged discrimination and retaliation under Texas law only,' he sought relief 'authorized only by federal law.'" (Opp. 6.) This quote omits key language: the *Medina* plaintiff sought remand because his "***original pleadings*** alleged discrimination and retaliation under Texas law only." 238 F.3d at 680 (emphasis added). Those pleadings, however, were amended to assert federal claims, and only "[a]fter this amendment" did the defendants "remove the case." *Id.* at 679; *see* Brief of Appellants, *Medina v. Ramsey Steel Co.*, 2000 WL 33993297, at *23 (5th Cir. Apr. 20, 2000) ("Appellee amended his lawsuit to include a cause of action under the [federal] Age Discrimination

2

and Employment Act."). The Fifth Circuit's opinion thus stands for the unremarkable proposition that federal jurisdiction exists over amended pleadings *that assert federal claims*.

The Opposition's remaining precedent is inapposite. In one, the court rejected remand because "a cursory reading of the complaint reveals that [the plaintiff] explicitly alleges violations of the FDCPA and FTCA as independent causes of action." *Johnson v. Portfolio Recovery Assocs., LLC*, No. 21 Civ. 1049S, 2021 WL 5275731, at *2–3 (W.D.N.Y. Nov. 12, 2021). In the other, the court expressly held that "the fact that a plaintiff in one case chooses to bring a claim as a federal one and thus invoke federal jurisdiction does not mean that federal *removal* jurisdiction will lie in an identical case if the plaintiff chooses not to assert a federal claim." *E. States Health & Welfare Fund v. Phillip Morris, Inc.*, 11 F. Supp. 2d 384, 390 (S.D.N.Y. 1998) (emphasis own).

At most, DailyPay identifies legal questions that might later be raised, such as whether the OAG may in this special proceeding obtain the remedies provided by the CFPA. But such arguments are precisely why there exists "a special and small category of actual state claims that present significant, disputed issues of federal law" that may be removed to ensure that "federal jurisdiction may be properly exercised." *Exxon*, 83 F.4th at 134. As shown in the Motion and again below, however, this proceeding does not fall within this special and small category.

Finally, DailyPay asserts that proceeding in state court when the OAG's claims may raise "novel questions about the contours of CFPA remedies" sets a "dangerous precedent." (Opp. 9–10.) But consumer protection is an area "traditionally regulated by the States," *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989), and Congress authorized the OAG to enforce the CFPA in state court. (Mem. 14.) Depriving New York courts of the opportunity to apply the state's usury prohibitions to novel products based on tangential federal issues is the true danger here.

3

## II. THIS PROCEEDING NECESSARILY RAISES NOVEL AND SUBSTANTIAL STATE LAW ISSUES BUT NO COMPARABLE FEDERAL LAW ISSUES

The Opposition's argument that this proceeding satisfies the *Gunn/Grable* substantial question test suffers two fatal defects: *first*, removal will disrupt the state-federal balance because key state-law questions are raised while Congress was indifferent to use of a federal forum; *second*, no single federal question meets each factor of the substantial question test, as it must.

### A. Exercising Jurisdiction on Any Basis Will Disrupt the State-Federal Balance

Under the *Gunn/Grable* framework, removal must not disturb the "balance of state and federal responsibilities." *Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 316 (2d Cir. 2016). Here, New York's interest in proceeding in New York court is substantial: as the Petitioner, the state's interests are at their zenith; the claims involve novel evasions of important state laws; and the proceeding invokes a unique state procedure. (*See* Mem. 18–20.) Federal interests, in contrast, are limited by Congress's express provision of a state forum for these claims.

DailyPay has little to say about New York's interests and ignores key precedent for remand. For example, the Opposition quotes twice from *Wells Fargo* but omits twice (Opp. 18, 20) the Second Circuit's instruction to consider "special state interests" when evaluating disruption. 824 F.3d at 316. DailyPay also minimizes the role of state courts, noting that federal courts previously have applied state usury laws. (Opp. 20.) But the question is not whether federal courts can apply the law, which of course they can, but whether they should defer to state courts on novel matters, as the Second Circuit held. *Young v. New York City Transit Auth.*, 903 F.2d 146, 163 (2d Cir. 1990). Meanwhile, DailyPay's suggestion that no novel state-law issues are raised is contradicted by both its own lengthy state-law argument in its preemptive suit (DP Compl. ¶¶ 37–50), and with an entire industry being at odds with the OAG's views of those laws (Opp. 15). Finally, the fact

that special proceedings have been removed before (Opp. 21) misses the point, which is that use of this procedure *still weighs in favor of remand*, as courts have held. (Mem. 19–20.)

Focusing instead on federal interests, the Opposition argues this proceeding "is inherently federal." (Opp. 19.) But as shown above, the Petition asserts state-law claims in which federal courts have no inherent interest. DailyPay also contends that remand "could threaten federal courts' jurisdiction over" certain legal questions (Opp. 19), but the identified questions are not necessarily raised, as shown below. And such hyperbole aside, "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive" (Mem. 17 (collecting cases))—as the Second Circuit recently reiterated. *See AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 40–41 (2d Cir. 2025) (state claims "often implicate the interpretation of federal" law but do not "necessarily trigger federal jurisdiction").

DailyPay also fails to confront a fundamental problem: the balance this Court is to assess is the one that Congress struck, and Congress made state and federal courts co-equals for resolving CFPA questions. (Mem. 13–14, 18.) This does not mean that state courts are "exclusive" forums or that no OAG claims could ever be removed, as DailyPay protests (Opp. 20)—in a garden-variety action, the co-equal status means that removal would not cause any disruption. But what it does mean is that in a proceeding such as this one, involving paramount state interests, the scales must tip back to state court. Removal will deprive New York courts of their proper role in interpreting and applying New York law to ongoing evasion by an emerging, exploitative industry in favor of a federal forum for which Congress expressed no preference. Nothing supports this result.

**B.     The Opposition's Identified Questions Cannot Sustain Federal Jurisdiction**

Independent of the disruption factor, DailyPay also must show that a single federal question satisfies all remaining *Gunn/Grable* factors. (Mem. 8.) But a question-by-question review (which the Opposition notably does not undertake) shows that no question satisfies every factor:

5

### *1.   Questions Regarding Remedies*

DailyPay's Opposition identifies two remedial issues: whether the CFPA permits the OAG to seek penalties and whether a jury trial is required. But federal issues are necessarily raised "***only*** if adjudication of" the state-law claims "***require*** a reviewing court ***at some point*** to apply a federal rule of decision." *Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 414 (S.D.N.Y. 2020) (emphasis added). "[I]f a court could resolve the case without reaching the federal issue, then the claims do not necessarily raise a federal issue." *Exxon*, 83 F.4th at 140 (quotations omitted).

Any arguments about penalties are "premature," as one court held when deferring the same issue on a motion to dismiss. *Texas v. Colony Ridge, Inc.*, No. 24 Civ. 941, 2024 WL 4553111, at *13 (S.D. Tex. Oct. 11, 2024); *see also Qatar*, 432 F. Supp. 3d at 414 (federal questions are raised where plaintiffs "***predicate liability***" on application of federal law) (emphasis own). Here, whether the OAG may obtain penalties might never be addressed for many reasons, such as a finding that penalties are unwarranted on the facts or a ruling for DailyPay on the merits. The question thus is not necessarily raised. *E.g.*, *Parish of Cameron v. Auster Oil & Gas, Inc.*, No. 16 Civ. 530, 2018 WL 2144281, at *3 (W.D. La. May 9, 2018) (no "federal issue is necessarily raised" where "no restoration remedy" potentially implicating federal law "has yet been ordered").

Whether a jury is required similarly puts the cart before the horse. Special proceedings are akin to summary judgment and require courts to determine whether material issues of disputed fact exist. (Mem. 4.) If none do, then there is no role for a jury, as another court recently found when upholding its assessment of CFPA penalties after summary judgment. *See* Order, ECF No. 131 at 4, *CFPB v. FDATR*, No. 20 Civ. 6879 (N.D. Ill. May 1, 2025) (defendant "lost liability at summary judgment" and thus no jury was required because "the Seventh Amendment does not entitle parties to a jury trial when there are no factual issues for a jury to resolve"). Here, too, a state court could

6

resolve this proceeding "without reaching" the identified jury question, and thus jurisdiction does not exist. *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 140–41 (2d Cir. 2012).

### 2. Questions Regarding the Statute of Limitations

DailyPay identifies a dispute over the statute of limitations for the OAG's Executive Law claims premised on CFPA violations. But it is black-letter law that "the statute of limitations is ordinarily an affirmative defense." *Walters v. Ind. & Comm. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011). And it is equally black-letter law that "a case may not be removed to federal court on the basis of a federal defense" even "if both parties admit that the defense" is disputed. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 14 (1983).

Moreover, the proper statute of limitations for a ***state claim*** is a question of ***state law***. While DailyPay might cite the CFPA's limitations period to argue for limited penalties, that too is a state-law question "addressed to the sound judicial discretion of the trial court." *State v. Princess Prestige Co., Inc.*, 42 N.Y.2d 104, 104 (1977). Thus, because a state-law holding would not be a "binding legal determination of rights and liabilities under federal law," the dispute does not create jurisdiction. *Belmont v. Jetblue Airways Corp.*, 401 F. Supp. 3d 348, 359 (E.D.N.Y. 2019).

### 3. Questions Regarding DailyPay's Violation of the CFPA

The remaining question is whether DailyPay violated the CFPA. (Opp. 14.) But any actual disputes on this question involve fact-specific applications of the CFPA to DailyPay's conduct and therefore do not present substantial questions. (Mem. 14–16 & n.1.) The Petition also is based on transactions in New York, and thus there is no federal impact beyond New York's borders. (*Id.* 15–17.) Finally, given Congress's conclusion that state courts can hear CFPA actions, DailyPay's liability under the CFPA does not present a substantial federal question. (*Id.* 13–15.)

The Opposition glosses over these arguments, starting instead with an overview of federal regulatory actions. (Opp. 14–15.) But these actions concerned *different* laws, such as the Truth in Lending Act. Those laws are not at issue here and cannot establish federal jurisdiction.

DailyPay attempts to skirt this shortcoming by arguing that a finding of CFPA deception would impose a nationwide disclosure requirement. (Opp. 14–15.) But that's nonsensical; as DailyPay notes, several states have enacted laws providing that Paycheck Advances are not loans (Opp. 3), and nothing here would compel DailyPay to disclose APRs in those states. Nor does the Petition on its face assert such a theory or seek such relief. Instead, the theory is straightforward (as DailyPay conceded in its own suit): if Paycheck Advances are loans that charge interest under New York law, then DailyPay's statements to New York borrowers are deceptive. (Mem. 15–17.) DailyPay now argues that it could avoid liability because it is not responsible for the statements or because the statements are not misleading. (Opp. 13.) But these are *precisely* the sort of fact-bound findings—apportionment of liability among contractual parties and whether particular language is deceptive—that do not raise substantial questions of law. (Mem. 15 –16 & n.1.)

Finally, the Opposition argues that a "novel question" is presented concerning abusiveness liability "based on a consumer's reasonable reliance on a third party." (Opp. 16.) But this is untrue; in *CFPB v. ITT Educational Services, Inc.*, the CFPB alleged two theories of reasonable reliance, one of which was "that students act[ed] in reasonable reliance *on the school's* misrepresentations." 219 F. Supp. 3d 878, 920 (S.D. Ind. 2015) (emphasis added). Even were the issue novel, however, it also is a classic application of law to fact and thus not substantial. (Mem. 15.) The CFPA bars taking "unreasonable advantage" of "the reasonable reliance by the consumer on a covered person to act in the interests of the consumer." 12 U.S.C. § 5531(d)(2)(C). Determining whether the

relationships between DailyPay, employers, and borrowers gives rise to liability under this standard is a quintessential application of facts to law that state courts can undertake.

The Opposition's remaining arguments all concern remedial or statutes of limitations questions that are not necessarily raised (*supra* 6–7); they thus are irrelevant.

## **CONCLUSION**

The OAG thus respectfully requests that the Court remand the Petition.

Dated: June 23, 2025                    Respectfully submitted,

                                                    LETITIA JAMES
                                                    Attorney General of the State of New York

                                                    By: */s/ Christopher L. Filburn*
                                                    Christopher L. Filburn
                                                    *Assistant Attorney General*
                                                    Bureau of Consumer Frauds & Protection
                                                    28 Liberty Street, 20th Floor
                                                    New York, New York 10005
                                                    Tel.: 212.416.8303
                                                    Email: christopher.filburn@ag.ny.gov

                                                    Of counsel:

                                                    Jane M. Azia
                                                    *Bureau Chief*

                                                    Laura J. Levine
                                                    *Deputy Bureau Chief*

                                                    *Counsel for Petitioner*
                                                    *People of the State of New York*

## CERTIFICATION

CHRISTOPHER L. FILBURN, an attorney duly admitted in the State of New York and authorized to practice before this Court, certifies under Local Civil Rule 7.1(c) and Paragraph III.D of the Court's Individual Practices, dated March 17, 2025, as follows:

1. I am an Assistant Attorney General assigned to the New York State Office of the Attorney General's Bureau of Consumer Frauds and Protection.

2. The foregoing Memorandum of Law complies with the word count limits set forth both in Local Civil Rule 7.1(c) and Paragraph III.D of the Court's March 17, 2025 Individual Practices in that it contains, exclusive of captions, indexes, and signature blocks, 2,791 words, according to the word count function of the word-processing program used to prepare it.

Dated: June 23, 2025  
       New York, New York

                                          */s/ Christopher L. Filburn*  
                                             Christopher L. Filburn