UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————

PEOPLE OF THE STATE OF NEW YORK, BY
LETITIA JAMES,

                          **Petitioner,**

            **- against -**

DAILYPAY, INC.,

                        **Respondent.**
————————————————————————————————

                       **25-cv-3439 (JGK)**

                       <u>**MEMORANDUM OPINION**</u>
                       <u>**AND ORDER**</u>

**JOHN G. KOELTL, District Judge:**

The petitioner, the People of the State of New York (the "State"), represented by Letitia James, Attorney General of the State of New York, initiated a special proceeding in the New York State Supreme Court, New York County, against the respondent, DailyPay, Inc. ("DailyPay"). <u>See</u> Verified Petition (the "Petition"), ECF No. 1-1. DailyPay removed this case from state court to federal court, invoking this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1367. <u>See</u> Notice of Removal, ECF No. 1. The State has moved to remand this case to state court pursuant to 28 U.S.C. § 1447. <u>See</u> Notice of Mot. to Remand, ECF No. 13. For the reasons stated below, the State's motion is **granted.**

                               **I.**

Unless otherwise indicated, the following facts are taken from the Petition and are accepted as true for purposes of deciding this motion. <u>See</u> <u>Qatar v. First Abu Dhabi Bank PJSC</u>,

432 F. Supp. 3d 401, 406 (S.D.N.Y. 2020); Fed. Ins. v. Tyco
Int'l Ltd., 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006).

**A.**

DailyPay is a New York-based company that uses technology
to provide hourly workers who are paid on fixed schedules early
access to wages that have been earned during the pay period but
not yet paid.  Petition ¶¶ 4, 7.  The State alleges that
DailyPay does so by making "small-dollar, short-term, high-cost
loans" (each called a "Paycheck Advance") to workers nationwide,
including to tens of thousands of workers in New York.  Id. ¶ 4.[1]
These Paycheck Advances are also known as "earned wage access"
("EWA") in the industry.  Id. ¶ 7.

DailyPay reaches workers by contracting with employers to
serve as the employers' exclusive provider of Paycheck Advances
to the employers' employees.  Id. ¶ 32.  Participating employers
agree to use "commercially reasonable efforts" to promote
DailyPay's Paycheck Advance program to their employees.  Id.
¶ 33.  DailyPay's employee-facing ads portray the Paycheck
Advance program as free, contrast the program with traditional
payday loans, and claim that the program will help improve
workers' financial well-being.  Id. ¶¶ 28-29, 38-46.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits
all internal alterations, citations, footnotes, and quotation
marks in quoted text.

However, the State alleges that these representations are
misleading.  The Paycheck Advances are allegedly expensive:
DailyPay's median Paycheck Advance for New York employees is for
about $75 and a $2.99 fee, to be repaid in eight days,
reflecting an annualized percentage rate, or APR, of nearly 200
percent.  Id. ¶¶ 54, 58.  The State alleges that, between
October 1, 2020, and December 31, 2024 (the "Data Period"),
DailyPay made more than 9.8 million Paycheck Advances to over
130,000 New York workers and collected more than $27 million in
total fees from these workers.  See id. ¶¶ 10, 55.  DailyPay
allegedly collected fees on roughly nine out of every ten
Paycheck Advances.  Id. ¶ 55.  Across all Paycheck Advances on
which DailyPay assessed fees during the Data Period, over 90
percent had APRs greater than 50 percent, and more Paycheck
Advances had APRs above 1,000 percent than below 50 percent.
Id. ¶¶ 59-60.

The State claims that DailyPay's Paycheck Advances are
loans; that DailyPay engages in usurious lending; and that
DailyPay acted deceptively, fraudulently, and abusively in its
marketing and offering of Paycheck Advances to workers.  Id.
¶¶ 3, 8-9; see also id. ¶¶ 113-47.

**B.**

In January 2025, the State issued a statutory pre-
litigation notice to DailyPay, asserting that: DailyPay's

product is a loan that violates state usury and wage assignment
laws by charging interest beyond the statutory limit; DailyPay's
marketing practices violate federal and state consumer
protection laws; and the State intended to commence litigation
against DailyPay to obtain appropriate relief.  See Compl. ¶ 34,
DailyPay, LLC v. James, No. 25-cv-2849, ECF No. 1.  After the
notice period expired, DailyPay commenced a preemptive suit in
this Court on April 7, 2025, seeking a declaration that
DailyPay's Paycheck Advances are not "loans" under New York law
and do not violate federal or state law.  See Compl., DailyPay,
LLC v. James, No. 25-cv-2849 (the "DJA Action").

On April 14, 2025, one week after DailyPay filed its
preemptive suit in this Court, the State initiated a special
proceeding in state court, raising eight claims against DailyPay
pursuant to New York Executive Law § 63(12).  Counts I, II, and
III allege that DailyPay's practices violated New York's wage
assignment, civil usury, and criminal usury laws, respectively.
Petition ¶¶ 113-24.  Count IV alleges that DailyPay engaged in
false advertising in violation of New York General Business Law
§ 350.  Id. ¶¶ 125-28.  Count V alleges that DailyPay committed
fraud.  Id. ¶¶ 129-32.  Count VI alleges that DailyPay's
marketing and offering of Paycheck Advances constituted
deceptive practices proscribed by New York General Business Law
§ 349.  Id. ¶¶ 133-36.  Count VII alleges that DailyPay engaged

in deceptive acts or practices in violation of the Consumer
Financial Protection Act ("CFPA"), 12 U.S.C. § 5531.  Id.
¶¶ 137-41.  Count VIII alleges that DailyPay's marketing and
offering of Paycheck Advances constituted abusive acts or
practices in violation of the CFPA.  Id. ¶¶ 142-47.  The State
seeks injunctive relief, restitution and damages, disgorgement
of profits, and civil money penalties against DailyPay.  Id.,
Prayer for Relief.

        DailyPay removed the Petition to this Court.  See Notice of
Removal.  The Court accepted this case as related to the DJA
Action.  See Apr. 29, 2025 Dkt. Entry.  The State has moved to
remand this proceeding to state court.  See Notice of Mot. to
Remand, ECF No. 13.

**II.**

        28 U.S.C. § 1441(a) provides that "[a]ny civil action
brought in a State court of which the district courts of the
United States have original jurisdiction" may be removed to
federal court.  On a motion to remand, "the defendant bears the
burden of demonstrating the propriety of removal."  Cal. Pub.
Emps.' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir.
2004).

        Out of respect for the limited jurisdiction of the federal
courts and the rights of states, the Court must "construe the
removal statute narrowly, resolving any doubts against

removability." Lupo v. Hum. Affairs Int'l, Inc., 28 F.3d 269,
274 (2d Cir. 1994).  Courts in this District have observed that
"[t]he presumption against federal jurisdiction is especially
strong in cases . . . involving States seeking to vindicate
quasi-sovereign interests in enforcing state laws and protecting
their own citizens from deceptive trade practices and the like."
In re Standard & Poor's Rating Agency Litig., 23 F. Supp. 3d
378, 385 (S.D.N.Y. 2014); see also New York by James v. Sirius
XM Radio, Inc., 735 F. Supp. 3d 272, 276 (S.D.N.Y. 2024).

III.

In removing the Petition to this Court, DailyPay asserted
federal jurisdiction pursuant to 28 U.S.C. § 1331.  That statute
gives district courts original jurisdiction of all civil actions
"arising under the Constitution, laws, or treaties of the United
States."  28 U.S.C. § 1331.

"[A] case can 'arise under' federal law in two ways." Gunn
v. Minton, 568 U.S. 251, 257 (2013).  First, and "[m]ost
directly, a case arises under federal law when federal law
creates the cause of action asserted."  Id.  Second, "even where
a claim finds its origins in state rather than federal law,"
there is a "special and small category of cases in which arising
under jurisdiction still lies."  Id. at 258.  In this "slim
category" of cases, "federal jurisdiction over a state law claim
will lie if a federal issue is: (1) necessarily raised,

(2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Id.; see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). Jurisdiction under this doctrine (the "Grable-Gunn test") is proper only when all four of these requirements are met. AMTAX Holdings 227, LLC v. CohnReznick LLP, 136 F.4th 32, 38 & n.6 (2d Cir. 2025) (emphasis omitted).

### A.

"Arising under" jurisdiction "is invoked by and large by plaintiffs pleading a cause of action created by federal law." Grable, 545 U.S. at 312. Under the canonical well-pleaded complaint rule, federal question jurisdiction generally "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Connecticut v. Exxon Mobil Corp., 83 F.4th 122, 132 (2d Cir. 2023). The well-pleaded complaint rule makes the plaintiff "the master of the claim," which means that, subject to exceptions not relevant in this case, a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." Id.

In this case, the State's Petition does "not affirmatively allege any cause of action created by federal law." Id. at 133. Rather, the Petition asserts eight causes of action under New York Executive Law § 63(12), a state law that authorizes the

7

Attorney General to seek injunctive relief, restitution, and
damages in New York state court when a person "engage[s] in
repeated fraudulent or illegal acts or otherwise demonstrate[s]
persistent fraud or illegality in the carrying on, conducting or
transaction of business." N.Y. Exec. L. § 63(12). For purposes
of the provision, "the term 'persistent fraud' or
'illegality' . . . shall include continuance or carrying on of
any fraudulent or illegal act or conduct." Id. Therefore,
under Executive Law § 63(12), "any conduct [that] violates state
or federal law is actionable." New York by James v. Citibank,
N.A., 763 F. Supp. 3d 496, 507 (S.D.N.Y. 2025); see also, e.g.,
Fed. Trade Comm'n v. Shkreli, 581 F. Supp. 3d 579, 627–28
(S.D.N.Y. 2022).

DailyPay resists this conclusion, arguing that Counts VII
and VIII of the Petition should be viewed as causes of action
created by the CFPA, 12 U.S.C. § 5531. According to DailyPay,
although Counts VII and VIII are styled as claims pleaded under
Executive Law § 63(12), these claims require the State to
establish violations of federal law, and some of the remedies
that the State seeks for these claims are available only under
the CFPA and not under § 63(12) or any other New York law.
However, DailyPay's arguments are unpersuasive.

As a preliminary matter, that Counts VII and VIII are
premised on allegations that DailyPay engaged in acts proscribed

by the CFPA does not change the fact that those Counts are
state-law claims created by § 63(12).  In this Circuit, courts
have uniformly characterized claims arising from state law that
"predicate[] liability on the application of federal law" as
state-law claims that necessarily raise federal questions — but
as state-law claims nonetheless.  Qatar, 432 F. Supp. 3d at 414-
15 (emphasis omitted); see also, e.g., New York ex rel. Jacobson
v. Wells Fargo Nat'l Bank, N.A., 824 F.3d 308, 315 (2d Cir.
2016) ("A state-law claim 'necessarily' raises federal questions
where the claim is affirmatively 'premised' on a violation of
federal law." (emphasis added)).  Accordingly, causes of action
that originate under Executive Law § 63(12) — even when
predicated on a violation of a federal law — are state-law
claims. See Sirius XM Radio, 735 F. Supp. 3d at 276.[2]

Furthermore, DailyPay fails to explain why the State's
request for federal statutory remedies transforms the Petition's
state-law claims into federal-law claims.  Indeed, in Broder v.
Cablevision Systems Corp., the plaintiff brought state-law
causes of action for breach of contract, violations of New York

---

[2] The distinctions between a claim brought under Executive Law
§ 63(12) and one brought under the CFPA strengthen this
conclusion.  Most notably, Executive Law § 63(12) requires the
State to establish that DailyPay's illegal conduct was
"repeated" or "persistent," an element that does not appear in
the relevant provision of the CFPA.  Compare N.Y. Exec. L.
§ 63(12), with 12 U.S.C. § 5531.

General Business Law § 349 (predicated in part on the violation
of a federal statute), and unjust enrichment, seeking damages, a
declaratory judgment that the defendant's actions violated state
and federal law, and an injunction.  418 F.3d 187, 192-93 (2d
Cir. 2005).  Although the court in <u>Broder</u> recognized that the
plaintiff could not obtain the declaratory relief he sought
without prevailing on an issue of federal law, the court
proceeded to analyze the plaintiff's claim as a state-law claim
that necessarily raised a federal issue, not as a federal-law
claim.  <u>See</u> <u>id.</u> at 194-95.  As <u>Broder</u> and the cases discussed in
the preceding paragraph demonstrate, a state-law claim that
looks to federal law for liability remains a state-law claim.

DailyPay offers no persuasive reason why the opposite
result should obtain when a state-law claim looks to federal law
for remedies.  The cases cited by DailyPay are inapposite
because the plaintiffs in those cases had raised at least one
federal cause of action, in addition to state-law causes of
action.  In one case, the plaintiff sought remand because his
"<u>original</u> pleadings alleged discrimination and retaliation under
Texas law only," but his amended pleadings — the operative
complaint — included a cause of action under the federal Age
Discrimination and Employment Act, which in turn provided for
unlimited back pay and liquidated damages as remedies.  <u>Medina</u>
<u>v. Ramsey Steel Co.</u>, 238 F.3d 674, 680 (5th Cir. 2001) (emphasis

added); see Br. of Appellants, Medina v. Ramsey Steel Co., 2000
WL 33993297, at *4-7, 23 (5th Cir. filed Apr. 20, 2000).
Likewise, in Johnson v. Portfolio Recovery Associates, LLC, the
court denied the plaintiff's motion to remand because the
plaintiff's complaint "explicitly allege[d] violations of [two
federal statutes] as independent causes of action."  No. 21-cv-
1049S, 2021 WL 5275731, at *2 (W.D.N.Y. Nov. 12, 2021).  By
contrast, in this case, the State has not asserted any cause of
action under federal law.[3]

At bottom, Counts VII and VIII are state-law claims that
necessarily raise the federal issue of whether DailyPay violated
the CFPA, a point that the State does not dispute.  However,
that does not make the Petition's state-law causes of action
federal causes of action.  Instead, that fact bears on whether
this case falls into that "special and small category of cases
in which arising under jurisdiction still lies" over state-law
claims under the Grable-Gunn test.  Gunn, 568 U.S. at 258.  The
Court will now address that question.

---

[3] Whether a plaintiff who "avoid[s] federal jurisdiction by
pleading state law" must then pay the "price" of forgoing the
federal remedies, as DailyPay contends, is a question that may
become relevant down the line if DailyPay is ultimately found
liable.  See E. States Health & Welfare Fund v. Philip Morris,
Inc., 11 F. Supp. 2d 384, 389 (S.D.N.Y. 1998). But that
potential issue does not change the fact that State in this case
has asserted only state-law claims in its Petition.

**B.**

Jurisdiction may still exist if the Petition's state-law claims "implicate significant federal issues." Grable, 545 U.S. at 312.  To invoke this doctrine, DailyPay must show that the State's claims that are premised on the CFPA involve a federal issue that is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn, 568 U.S. at 258.  The parties principally disagree on whether DailyPay has satisfied the second, third, and fourth elements of the Grable-Gunn test; the State does not dispute that the first requirement has been met, although it contests DailyPay's description of the federal issues that are "necessarily raised."  For the sake of completeness, the Court analyzes all four elements.

**1.**

First, DailyPay contends — and the State does not dispute — that the Petition "necessarily raise[s]" a federal issue.  In relevant part, the Petition alleges that DailyPay's failure to market its Paycheck Advance product as a "loan" with interest constituted deceptive (Count VII) and abusive (Count VIII) acts or practices in violation of 12 U.S.C. § 5531.  Counts VII and VIII are plainly predicated on DailyPay's alleged violations of the CFPA, a federal law.  A court therefore could not resolve

the case without reaching the federal issue of whether
DailyPay's alleged conduct is proscribed by the CFPA.  See Exxon
Mobil, 83 F.4th at 140.

DailyPay identifies three other federal issues that it
claims are "necessarily raised" in this case: whether the State
can bring its Executive Law § 63(12) claims even when the claims
would otherwise be time-barred under the CFPA; whether state
attorneys general (rather than the Consumer Financial Protection
Bureau) may recover civil penalties for violations of the CFPA;
and whether permitting the State's claims to be decided
summarily by a state-court judge in a special proceeding would
deprive DailyPay of its constitutional right to a jury trial in
actions seeking civil penalties.  However, DailyPay's attempt to
manufacture other "necessarily raised" federal issues is
unpersuasive.

As to the statute of limitations issue, the "lapse of a
limitations period" is generally "an affirmative defense."
Whiteside v. Hover-Davis, Inc., 995 F.3d 315, 319 (2d Cir.
2021).  It is "settled law" that "a case may not be removed to
federal court on the basis of a federal defense, . . . even if
the defense is anticipated in the plaintiff's complaint, and
even if both parties admit that the defense is the only question
truly at issue in the case."  Franchise Tax Bd. of State of Cal.
v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 14

(1983).  When a federal issue "comes into the case as a
defense," the issue is "not necessarily raised by the
[plaintiffs'] affirmative claims," which means that jurisdiction
would not be appropriate on that basis under the Grable-Gunn
test.  New York v. Shinnecock Indian Nation, 686 F.3d 133, 140
n.4 (2d Cir. 2012).

      As to the two remedial issues — whether the State can seek
civil penalties for violations of the CFPA and whether a jury is
required — those federal issues are not "necessarily raised" by
the Petition because a court could potentially resolve the case
without ever reaching them.  For a federal issue to be
"necessarily raised," "the pertinent question of federal law
must be a necessary element of one of the well-pleaded state
claims."  Exxon Mobil, 83 F.4th at 140 (emphasis in original).
In other words, DailyPay "must point to a necessary element of
proving liability under [the state-law claims] that is
affirmatively premised on [DailyPay's] violation of," and "could
not be resolved without applying," a federal rule of decision.
Id. (emphasis added); see also Qatar, 432 F. Supp. 3d at 414
("[P]laintiffs 'necessarily raise' federal issues only if
adjudication of their state-law claims require[s] a reviewing
court at some point to apply a federal rule of decision."
(emphasis added)).  In this case, the arguments raised by
DailyPay about penalties are premature.  There has been no

finding of liability against DailyPay yet, nor have any remedies, including civil penalties, been ordered. Indeed, it is unclear at this point whether any remedies will ever be ordered.

Because all four of the Grable-Gunn requirements must be met for jurisdiction to be proper, and the limitations-period and remedial issues identified by DailyPay do not meet the "necessarily raised" requirement, jurisdiction cannot be premised on those issues. It is therefore unnecessary to analyze those issues further. Accordingly, the Court will evaluate whether the only federal questions that are "necessarily raised" — questions pertaining to whether DailyPay violated the CFPA — satisfy the remaining three Grable-Gunn requirements.

## 2.

As to the second Grable-Gunn requirement, a federal issue is "actually disputed" when there is a controversy "respecting the effect of federal law." Gunn, 568 U.S. at 259. In this case, the requirement is satisfied because whether DailyPay violated the CFPA is an actually disputed issue. See Broder, 418 F.3d at 195 (finding the "actually disputed" requirement met where the parties disagreed on whether the defendant's practices violated a federal statute); N.Y.C. Health & Hosps. Corp. v. WellCare of New York, Inc., 769 F. Supp. 2d 250, 256–57

(S.D.N.Y. 2011) (finding the requirement met where the parties disagreed on the proper interpretation of Medicare law and regulations).

The State's argument to the contrary is without merit. The State seizes on DailyPay's statement in the DJA Action complaint that the alleged violations of the CFPA "all depend on the [State]'s flawed assumption that DailyPay's [Paycheck Advance] product is a loan." DJA Action Compl. ¶ 52. According to the State, whether DailyPay's Paycheck Advances are loans and whether its fees are interest are questions of state law, not federal law. But the State overlooks other federal-law issues that a court will have to decide in adjudicating Counts VII and VIII, including the meaning of "abusive" under the CFPA and whether that term applies to DailyPay's alleged practices in this case. Therefore, the second Grable-Gunn requirement is met.

**3.**

Grable-Gunn's third requirement, substantiality, looks to "the importance of the issue to the federal system as a whole." Gunn, 568 U.S. at 260. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim necessarily raises a disputed federal issue . . . ." Id. (emphasis in original). After "careful, case-specific consideration, most

16

federal law questions raised in connection with state law claims
will not be deemed substantial." NASDAQ OMX Grp., Inc. v. UBS
Secs., LLC, 770 F.3d 1010, 1029 (2d Cir. 2014).

What makes a federal issue sufficiently substantial?
Courts have found the substantiality requirement satisfied when,
for example, "a state-law claim would yield an interpretation of
federal law that would be controlling in numerous other cases."
AMTAX Holdings, 136 F.4th at 39. An issue is also more likely
to be substantial if it "challenges the action of any federal
department, agency, or service," id., or otherwise "has broader
significance for the Federal Government by, for example,
affecting the government's practices in other cases,"
Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.,
Inc., 116 F.4th 106, 116 (2d Cir. 2024). By contrast, issues
that are "fact-bound and situation-specific" are not
sufficiently substantial to establish federal question
jurisdiction. Gunn, 568 U.S. at 263.

In this case, the federal issues raised are not important
to the federal system as a whole. Determining whether
DailyPay's marketing and offering of Paycheck Advances
constituted deceptive or abusive practices in violation of the
CFPA involves the application of law (12 U.S.C. § 5531) to a
particular set of facts (DailyPay's business model and
practices) — precisely the kind of "fact-bound and situation-

specific" issue that courts have found insufficiently substantial.  Id.; see also Sunvestment, 116 F.4th at 116-17 (finding the substantiality requirement unmet where a court's decision would turn on, among other things, the practices of a particular utility company); Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric., 557 F. App'x 87, 90 (2d Cir. 2014) (summary order) (declining to exercise jurisdiction over a state-law claim that involved a fact-specific application of federal regulations to a party because that determination "d[id] not implicate the validity of the regulations themselves, or have any other broader effect on federal interests").

DailyPay attempts to characterize the question whether DailyPay's practices violate the CFPA as "a nearly pure issue of law that would govern all future cases against EWA providers." DailyPay Opp. at 15, ECF No. 18.  But this description overstates the scope of the inquiry that a court would undertake in this case.  In the next sentence, DailyPay complains that the State "has initiated an enforcement action based on the same legal theories against another EWA provider with a substantially different business model."  Id. at 15-16 (emphasis added).  That statement is telling: plainly, the application of the CFPA to other EWA companies' practices in separate cases may turn on what those other companies' different business models and marketing practices are.  In short, whether DailyPay's practices

are deceptive and abusive are "inherently fact-intensive issue[s] that will provide little guidance in future cases, which likely will involve completely different [practices]." Sirius XM Radio, 735 F. Supp. 3d at 280.

DailyPay's claims are unlikely to be significant to the federal system for the additional reason that this case "does not implicate any action of the federal government." AMTAX Holdings, 136 F.4th at 40. No federal department or agency is "a party to or otherwise involved in this action." Id.

The resolution of the CFPA-related issues raised in these state-law claims is undoubtedly "vitally important" to the parties in this case. Gunn, 568 U.S. at 263. But that is not enough to render those issues "substantial" under the Grable-Gunn test. Accordingly, because the federal issues necessarily raised in this case fail to satisfy the substantiality requirement, federal "arising under" jurisdiction is not proper.

**4.**

DailyPay's argument also fails on the fourth Grable-Gunn requirement: that the exercise of federal jurisdiction "not disturb any congressionally approved balance of state and federal judicial responsibilities." Jacobson, 824 F.3d at 316. This requirement "focuses principally on the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected." Id.

19

Exercising jurisdiction over this action would disrupt the federal-state balance approved by Congress in the CFPA. The CFPA explicitly authorizes state attorneys general to bring civil actions in state court "to enforce provisions of [the CFPA] or regulations issued under [the CFPA] and to secure remedies under provisions of [the CFPA] or remedies otherwise provided under other law." 12 U.S.C. § 5552(a)(1). Because the State's ability to bring this proceeding in state court was "expressly preserved" — indeed, expressly authorized — by the CFPA, "it would be inconsistent with the division of responsibilities that Congress set forth" in the statute to exercise jurisdiction in this case. Sirius XM Radio, 735 F. Supp. 3d at 281.

This conclusion is reinforced by the fact that "[t]his is a consumer-protection lawsuit brought by the State to enforce its own consumer-protection laws through a special proceeding pursuant to a state statute that specifically selects the New York State Supreme Court as the proper forum for such a suit." Id. (citing Exec. L. § 63(12)). In a state special proceeding, the State has at its disposal certain procedures designed to facilitate a summary disposition of the issues presented — procedures that the State would be forced to forgo were the case removed to federal court. See id.; see also Davidson v. Capuano, 792 F.2d 275, 280 (2d Cir. 1986)

(describing the differences between a New York special
proceeding and an ordinary civil action).  On a related note,
removal under these circumstances would be particularly
problematic when, as in this case, the action was brought by the
State itself, and therefore "the claim of sovereign protection
from removal" is "at its zenith."  In re Standard & Poor's, 23
F. Supp. 3d at 392.

Finally, finding jurisdiction in this case could
"meaningfully increase the number of cases that would be filed
in federal court" by "open[ing] the floodgates to analogous
state suits premised on violations of other federal consumer
protection statutes."  Sirius XM Radio, 735 F. Supp. 3d at 282.
"[I]t is not the 'rare' state consumer protection suit that
involves alleged violations of federal law; instead, state
courts frequently handle state-law consumer protection suits
that refer to or are predicated on standards set forth in
federal statutes."  In re Gen. Motors LLC Ignition Switch
Litig., 69 F. Supp. 3d 404, 415 (S.D.N.Y. 2014).  Accordingly,
jurisdiction over actions like this one would "threaten to
affect[] the normal currents of litigation."  Grable, 545 U.S.
at 319.

In sum, because the federal issues raised in this case are
not sufficiently substantial, and exercising jurisdiction would
"disrupt[] Congress's intended division of labor between state

and federal courts," federal jurisdiction is improper. <u>Gunn</u>, 568 U.S. at 258. The State's motion to remand is therefore **granted**.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the State's motion to remand is **granted**. The Clerk is requested to close ECF No. 13; to **remand** this case to the New York State Supreme Court, New York County; and to close the case on the docket of this Court.

**SO ORDERED.**

Dated:    New York, New York
          September 19, 2025

                                        John G. Koeltl
                              **United States District Judge**